UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SONIA L. SABATH,

    Plaintiff,

v.

    No. CIV 99-621 MV/KBM

LOVELACE HEALTH SYSTEMS, INC.,

    Defendant.

## LOVELACE HEALTH SYSTEMS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR DISMISSAL AND SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11

At best, Plaintiff Sonia Sabath's counsel's (Hannah B. Best and Gail Heglund)[1], response to Lovelace Health System Inc.'s ("Lovelace") Motion for Dismissal and Sanctions Pursuant to Rule 11 demonstrates a woefully ignorant inquiry into and understanding of the facts and the law in this case. At worst, counsel, knowingly aware of the facts and law, chose to pursue this case by filing a Second Amended Complaint regardless, and continued to pursue it after Lovelace's counsel educated Sabath's counsel on the law.

Federal Rule of Civil Procedure 11 places an affirmative duty upon an attorney to conduct a reasonable inquiry into the facts and the law before filing a pleading. Sabath's counsel clearly did not make a reasonable inquiry, either before agreeing to represent her or before filing the Second Amended Complaint or this response. Sabath agreed to be subject to binding arbitration,

---

[1] Lovelace filed its Rule 11 motion and brief against Hannah B. Best, not her firm, as Rule 11 is an individual attorney's certification to the court. The response brief to the motion was signed by Gail Heglund, an associate at Ms. Best's firm. This response brief is filled with misstatements and, as such, Lovelace's reply brief, now incorporates both attorneys, Ms. Best and Ms. Heglund, as having violated Rule 11.

participated in binding arbitration, and now dissatisfied with the outcome, has retained counsel to begin anew to litigate all of the issues surrounding her employment with Lovelace. In their response, Sabath's counsel makes bald assertions with no factual or evidentiary support, which are clearly misstatements, and indicate a lack of research into the facts. Had counsel fulfilled their duty under Rule 11, this lawsuit would not be wasting both judicial and Lovelace's resources.

## Plaintiff's Counsel Have Failed to Inquire into the Facts

In the response, counsel wrongfully claim "[a]t no time did Sonia Sabath sign an agreement to arbitrate all state and federal claims under the FAA, or otherwise. Ms. Sabath has no other binding agreement to arbitrate her claims with Defendant." See Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and for Sanctions ("Response Brief"), p. 2. On May 9, 1997, Sabath signed a statement acknowledging that she had "read and reviewed the changes to the Employee Relations Policy: Peer Review and Arbitration." See Affidavit of Carol Shelton ¶ 3, and accompanying Exhibit B **(Exhibit 1)**. Plaintiff received a copy of the Arbitration Rules and Procedures at the time she signed the acknowledgment. See **Exhibit 1**, ¶¶ 2, 4, and accompanying Exhibit A. The policy explains the binding nature of the arbitration and states the policy "is intended to prevent an employee from going to court over employment related disputes." The arbitration policy was a material term and condition of her employment. See **Exhibit 1**, ¶ 4.

Plaintiff herself demonstrated her understanding of the binding nature of arbitration when she initiated the arbitration process. Plaintiff sent a letter to CIGNA Corporate Employee Relations Department stating "This is the demand for Arbitration as required in the

2

Lovelace/CIGNA policy." See Exhibit 1, attached to Lovelace Health Systems, Inc.'s Brief in Support of Its Motion for Dismissal and Sanctions Pursuant to Federal Rule of Civil Procedure 11 ("Lovelace's Brief"). She clearly understood that she had agreed to, and was bound by, the arbitration policy when she sent this letter.

Prior to demanding arbitration, Sabath had access through her manager to the full Arbitration Rules and Procedures. Following her demand for arbitration, she obtained counsel and received from Lovelace another complete copy of the Arbitration Rules and Procedures, as did her counsel. Plaintiff's current counsel also has a copy of the Arbitration Rules and Procedures. See Exhibit A to Plaintiff's Reply to Defendant's Response to Motion to Amend Complaint, filed December 13, 1999. As quoted below from multiple sections of the Arbitration Rules and Procedures, the document fully explains that arbitration is binding and the final means of resolving employment-related disagreements.

> In the interest of fairly and quickly resolving employment-related disagreements and problems, and applying the important public policies expressed in the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., [Lovelace's] policy is that Arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by [Lovelace's] internal dispute resolution processes. Both [Lovelace] and the employee will be bound by any decision made by a neutral arbitrator. If the employee or [Lovelace] do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but Arbitration must be used before going to court. This policy is intended to prevent an employee from going to court over employment related disputes, it is not intended to take away any other rights.
>
> . . . .
>
> This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the

3

> Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, <u>the Americans with Disabilities Act</u>, the Family and Medical Leave Act, <u>and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment. This policy is intended to substitute final and binding arbitration, which is quick, inexpensive and fair, for going to court, which is slow and expensive.</u>
>
> . . . .
>
> <u>This policy does, however, require than an employee who disagrees with any disciplinary action or other adverse employment decision, demand arbitration in accordance with [Lovelace's] Arbitration Rules and Procedures rather than go to court</u>, if the matter has not been resolved under [Lovelace's] internal dispute resolution processes.

See Exhibit 5, pp. 1, 2 (emphases added) to Lovelace's Brief.

Not only has Plaintiff's counsel apparently not acquainted themselves with the Arbitration Rules and Procedures, and Plaintiff's prior submission of her claims to binding arbitration, but counsel apparently have not taken the time to review the arbitrator's decision which conclusively shows that none of the factual allegations contained in the Second Amended Complaint has evidentiary support.

After a four-day hearing, and substantial pre-hearing discovery, the arbitrator found none of the factual allegations of wrongdoing, as realleged in the Second Amended Complaint, had any merit. Specifically, the arbitrator found no objective evidence of Plaintiff's alleged cognitive and vision problems. See Exhibit 4, p. 3 to Lovelace's Brief. Further, the arbitrator found that Plaintiff resisted all efforts at receiving additional training to meet Lovelace's required cross-training goals, including refusal to study at an off-site specialized school, and self-study of eight paid hours per week, during her regular shift. See id. The arbitrator further found that "similarly situated employees became cross trained" and that Plaintiff was capable, "but because she did not

think she could learn-she didn't." Id. at 4.

Further, if counsel had reviewed the arbitration discovery and contacted Plaintiff's arbitration counsel, they would have found that Plaintiff was sent for significant medical testing and evaluation, afforded extensions to complete her cross-training, and other accommodations. But, sadly, as the arbitrator concluded, Plaintiff "never accepted management's view that she should cross train," so essentially "self-fulfilled her own prophecy." Id.

**Plaintiff's Counsel Have Failed to Analyze the Law**

Counsel failed to respond to Lovelace's res judicata argument or why its cited Rule 11 cases should not apply, and instead cited an inapplicable collective bargaining case to show why enforcement of arbitration clauses is an unclear area of the law. Counsel relies upon Harrison v. Eddy Potash, Inc., 112 F.3d 1437 (10th Cir. 1997), judgment vacated and remanded by, 524 U.S. 947 (1998), rev'd on other grounds by, 158 F.3d 1371 (10th Cir. 1998), which involved a union employee and a collective bargaining agreement which contained a grievance procedure. The court held that the plaintiff in Harrison was not required to comply with the grievance procedures in her collective bargaining agreement before pursuing a Title VII claim. See 112 F.3d at 1452-54. Further, the court stated that arbitration clause at issue in Harrison was not encompassed by the Federal Arbitration Act, therefore the court refused to apply cases involving interpretation of the Federal Arbitration Act. See id. at 1454.

In the present case, Plaintiff is not a member of a union and not subject to a collective bargaining agreement. Unlike the plaintiff in Harrison, Plaintiff voluntarily signed a statement agreeing to be bound by the arbitration policy, demanded arbitration, took advantage of the discovery mechanisms afforded by the arbitration policy, and voluntarily participated in a four-day arbitration hearing regarding the termination of her employment.

Tenth Circuit law is clear that counsel who pursue cases in federal court after the client has participated in binding arbitration are subject to Rule 11 violations. See Keil-Koss v. CIGNA, 211 F.3d 1278, 2000 WL 531461 (10th Cir. 2000) (unpublished opinion), Exhibit 10 to Lovelace's Brief; White v. General Motors Corp., 977 F.2d 499 (10th Cir. 1992); Casillan v. Regional Transp. Dist., 986 F.2d 1426, 1993 WL 8732 (10th Cir. 1993) (unpublished opinion), Exhibit 9 to Lovelace's Brief.

Next, counsel contend that Plaintiff only participated in an internal grievance procedure. Yes, Plaintiff participated in an internal grievance procedure, the "peer review process." When that proved unsuccessful, Plaintiff then understood her next step, she pursued her claims in accordance with the arbitration policy to which she had agreed. The arbitration was not an internal grievance procedure, as clearly stated in the Arbitration Rules and Procedures. ("Arbitration . . . is the required and final means for the resolution of any serious disagreements and problems <u>not resolved by [Lovelace's] internal dispute resolution processes</u>. . . . This policy does, however, require that an employee . . . demand arbitration . . ., <u>if the matter has not been resolved under [Lovelace's] internal dispute resolution processes.</u>" Exhibit 5, pp. 1, 2 to Lovelace's Brief).

Finally, counsel attempt to cloud the issue by stating that "Plaintiff did not have the luxury of extended negotiations with Defendants" because "of the short statute of limitations involved in federal discrimination claims." During the time of the issuance of the right to sue letter by the Equal Employment Opportunity Commission and the 90-day statute of limitations, Plaintiff consulted at least one attorney, who, in turn, contacted Lovelace's in-house counsel. CIGNA in-house counsel informed her this attorney that the arbitration policy was final and binding, and sent her applicable case law. See Letters from CIGNA in-house counsel **(Exhibit**

6

2). The attorney, obviously understanding the Rule 11 implications, did not file suit, and instead Plaintiff filed pro se, and did not serve the complaint on Lovelace, until retaining present counsel.

## Conclusion

Plaintiff's recourse after not succeeding in the arbitration was to file an action to vacate the arbitration award in court. Plaintiff did not do so, instead attempting to begin anew in federal court, then recruiting counsel who failed to investigate the facts and laws before taking on her cause, and continuing her case even after being alerted to the law and the facts. Plaintiff's counsel should be subjected to sanctions, including attorneys' fees, under Rule 11, and this case should be dismissed.

WIGGINS, CAMPBELL & WELLS
A Professional Corporation

By _____
Lorna M. Wiggins
Attorneys for Lovelace Health Systems, Inc.
20 First Plaza, Suite 710 (87102)
P. O. Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400

We hereby certify that a copy of the foregoing was mailed to opposing counsel of record on this 27th day of July, 2000.

WIGGINS, CAMPBELL & WELLS
A Professional Corporation

By _____
Lorna M. Wiggins

H:\LMW\CLIENT\1605\009\pldgs\reply-rule11motion-brief.wpd

7

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.