UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED

00 JUL 28 PM 1:24

SONIA L. SABATH,

Plaintiff,

vs.

No. CIV 99-621 MV/KBM

LOVELACE HEALTH SYSTEMS, INC.,

Defendant.

## LOVELACE HEALTH SYSTEMS, INC.'S REPLY BRIEF TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON ITS MOTION TO DISMISS ON GROUNDS OF CLAIM PRECLUSION (RES JUDICATA) OR, ALTERNATIVELY, FOR FAILURE TO COMPLY WITH THE FEDERAL ARBITRATION ACT

Plaintiff Sonia Sabath attempts to shift the emphasis of Defendant Lovelace Health Systems, Inc.'s ("Lovelace") argument from one of claim preclusion (res judicata) to one filled with misstatements that Plaintiff never agreed to binding arbitration. Such bald misstatements are worthy of sanctions and fees by this Court. Apparently, Plaintiff refuses to accept the fact that she agreed to be bound to an arbitration policy, that she received a copy of that policy, that she participated in a four-day arbitration proceeding, and that the arbitrator clearly wanted to find for Plaintiff, but could not find any wrongdoing on Lovelace's part. Now, contrary to prevailing case law, Plaintiff and her counsel believe she is entitled to start all over again in federal court to rehash the same employment issues despite the arbitrator having concluded that Plaintiff refused to accept management's requirements of her.

In her Response Brief, Plaintiff argues that she did not sign an agreement to arbitrate, that any arbitration policy is not valid and enforceable, and therefore that claim preclusion (res judicata) does not apply. All of Plaintiff's arguments lack merit for numerous reasons. First, Plaintiff did sign an agreement to arbitrate all of her employment-related disputes. Second, this agreement is enforceable. Third, regardless Plaintiff did participate voluntarily in arbitration, and New Mexico



and Tenth Circuit law recognize that an arbitration which affords the same protections as a trial has preclusive effect on a subsequent court action.

## Plaintiff Misstates the Facts and Misunderstands the Law Regarding Employee Agreements to Arbitrate

### A.     Plaintiff Did Sign an Enforceable Agreement to Arbitrate

Incredibly, Plaintiff claims "[a]t no time did Sonia Sabath sign an agreement to arbitrate all state and federal claims under the FAA, or otherwise. Ms. Sabath has no other binding agreement to arbitrate her claims with Defendant." See Response Brief, p. 2. Plaintiff has not filed an affidavit or submitted any evidence to support her allegations in her Response Brief, because she honestly cannot make such a statement. On May 9, 1997, Plaintiff signed a statement acknowledging that she had "read and reviewed the changes to the Employee Relations Policy: Peer Review and Arbitration." See Affidavit of Carol Shelton ¶ 3, and accompanying Exhibit B **(Exhibit 1)**. Plaintiff received a copy of the Arbitration Rules and Procedures at the time she signed the acknowledgment. See **Exhibit 1**, ¶¶ 2, 4, and accompanying Exhibit A. The policy explains the binding nature of the arbitration and states the policy "is intended to prevent an employee from going to court over employment related disputes." The arbitration policy was a material term and condition of Plaintiff's employment. See **Exhibit 1**, ¶ 4.

Plaintiff herself demonstrated her understanding of the binding nature of arbitration when she initiated the arbitration process. Plaintiff sent a letter to CIGNA Corporate Employee Relations Department stating "This is the demand for Arbitration as required in the Lovelace/CIGNA policy." See Exhibit 1 to Lovelace's Brief. She clearly understood that she had agreed to, and was bound by, the arbitration policy when she sent this letter.

2

At the December 1998 arbitration, Plaintiff was represented by counsel, who was familiar with the Arbitration Rules and Procedures, and utilized the policy to conduct substantial discovery. Multiple sections of the Arbitration Rules and Procedures explicitly explain that arbitration is binding and the final means of resolving employment-related disagreements.[1]

### B. Employees Who Individually Agree to Employer's Arbitration Policies Are Bound by Such Policies

Next, Plaintiff cites case law regarding collective bargaining agreements and arbitration to support her position that Plaintiff did not contract to arbitrate. Plaintiff fails to note, however, that these cases support Lovelace's position that an individual who agrees to an arbitration clause is required to arbitrate. Plaintiff cites Harrison v. Eddy Potash, Inc., 112 F.3d 1437 (10th Cir. 1997), judgment vacated and remanded by, 524 U.S. 947 (1998), rev'd on other grounds by, 158 F.3d 1371 (10th Cir. 1998), for the proposition that "the context in which an arbitration clause arises cannot be ignored." Lovelace agrees with this statement. In the case at bar, the "context" is that Plaintiff

---

[1] In the interest of fairly and quickly resolving employment-related disagreements and problems, and applying the important public policies expressed in the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq., [Lovelace's] policy is that Arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by [Lovelace's] internal dispute resolution processes. Both [Lovelace] and the employee will be bound by any decision made by a neutral arbitrator. If the employee or [Lovelace] do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but Arbitration must be used before going to court. This policy is intended to prevent an employee from going to court over employment related disputes, it is not intended to take away any other rights.
. . . .
This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law. Such serious disputes include claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal, state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment. This policy is intended to substitute final and binding arbitration, which is quick, inexpensive and fair, for going to court, which is slow and expensive.
. . . .
This policy does, however, require than an employee who disagrees with any disciplinary action or other adverse employment decision, demand arbitration in accordance with [Lovelace's] Arbitration Rules and Procedures rather than go to court, if the matter has not been resolved under [Lovelace's] internal dispute resolution processes. See Exhibit 2, pp. 1, 2 (emphases added) to Lovelace's Brief.

3

individually signed an arbitration agreement, then participated in the arbitration process, only to be unhappy with the result.

Harrison involved a union employee and a collective bargaining agreement which contained a grievance procedure. The court held that the plaintiff in Harrison was not required to comply with the grievance procedures in her collective bargaining agreement before pursuing a Title VII claim. See 112 F.3d at 1452-54. Further, the court stated that arbitration clause at issue in Harrison was not encompassed by the Federal Arbitration Act ("FAA"), therefore the court refused to apply cases involving interpretation of the FAA, namely, Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991), which held that an individual who agreed to arbitrate his employment-related disputes in accorded with the FAA was bound to do so. See id. at 1454.

This case is not a collective bargaining case, and as cited by Plaintiff in her Response Brief, page 4, the Eleventh Circuit has refused to enforce arbitration unless an employee "agreed individually to the contract containing the arbitration clause." Brisentine v. Stone & Webster Engineering Corp., 117 F.3d 519 (11th Cir. 1997). This is in contrast to a union agreeing that its members must arbitrate with their employer. Thus, where an employee and employer have expressly agreed to arbitrate disputes, both the FAA, 9 U.S.C. §1, *et seq.* (1994), and the New Mexico Uniform Arbitration Act, NMSA 1978, §§44-7-1 to -22 (1971)("UAA"), require a court to compel arbitration, as does the Brisentine case. See 9 U.S.C. §2; §§44-7-1, -2; Brisentine, 117 F.3d at 522-25. Here, Plaintiff agreed to an arbitration policy and arbitrated her claims in accordance with that policy.

As implemented by Congress, the purpose behind the FAA was "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other

contracts." Gilmer, 500 U.S. at 24. The FAA states that in transactions involving commerce, an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25. Similarly, the UAA, Section 44-7-1, enforces arbitration provisions, including "arbitration agreements between employers and employees." The UAA mandates arbitration upon "application of a party showing an agreement [to arbitrate] and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration." Section 44-7-2(A).

The United States Supreme Court has held that the FAA preempts state laws providing for a judicial forum for the resolution of claims where the parties agree to resolve such claims by arbitration. See Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989) (citations omitted). In other words, the FAA "withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). New Mexico soundly agrees with this policy because the UAA affirmatively requires courts to mandate arbitration in the same manner as the FAA. See § 44-7-2; see also Board of Educ. Taos Municipal Schs. v. The Architects, 103 N.M. 462, 463, 709 P.2d 184, 185 (1985) (there is a "strong policy preference for arbitration as a more efficient mode of resolving disputes than litigation").

The Tenth Circuit recently reaffirmed its position regarding agreements to arbitrate in McWilliams v. Logicon, Inc., 143 F.3d 573 (10th Cir. 1998). There, the Court considered the scope of an employee's agreement to arbitrate any "controversies, claims, and/or disputes arising out of the

5

termination of [his] employment with [Logicon]." Id. at 574. Plaintiff claimed that the defendant violated the Americans with Disabilities Act by failing to provide him with requested accommodation for a number of disabling conditions from which he suffered, and by terminating him on the basis of those disabling conditions. Plaintiff argued that his claim for failure to accommodate did not arise "out of the termination of his employment with [Logicon]" and was therefore not included among the claims he agreed to arbitrate. The Court flatly rejected this argument, finding that "[t]he allegations in [plaintiff]'s complaint can be fairly interpreted to arise from [defendant]'s termination of [his] employment." Id. at 576. The Tenth Circuit found a presumption in favor of arbitration and compelled arbitration of all of plaintiff's claims. Id.

Plaintiff argues that her participation in binding arbitration was part of an "internal grievance process." Yes, Plaintiff participated in an internal grievance procedure, the "peer review process." When that proved unsuccessful, Plaintiff then understood her next step and she pursued her claims in accordance with the arbitration policy to which she had agreed. The arbitration was not an internal grievance procedure, as clearly stated in the Arbitration Rules and Procedures. ("Arbitration . . . is the required and final means for the resolution of any serious disagreements and problems not resolved by [Lovelace's] internal dispute resolution processes. . . . This policy does, however, require that an employee . . . demand arbitration . . ., if the matter has not been resolved under [Lovelace's] internal dispute resolution processes." Exhibit 2, pp. 1, 2 to Lovelace's Brief).

Plaintiff's argument that she was not required to arbitrate, and did so only as part of an internal process is wholly without merit, and contrary to all pertinent case law.

### C. The FAA Covers State Law Claims as Expressly Agreed to by Plaintiff

Plaintiff incredibly also asserts that she "made no agreement to submit her state court claim for wrongful or public policy discharge to arbitration." Response Brief, p. 5. The Arbitration Rules

6

and Procedures explicitly state that they cover "claims, demands or actions under . . . state or local statute, regulation or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment." Exhibit 2, p. 1 to Lovelace's Brief. Her alleged causes of action under state law involve the same underlying set of facts and discrimination statutes arbitrated already, and to which the arbitrator found no evidence of any type to support Plaintiff's factual allegations in her Second Amended Complaint and Jury Demand ("Second Amended Complaint").

Plaintiff relies upon two out of state cases to support her position (which are both distinguishable as argued below) but ignores the fact that Plaintiff agreed to submit her state law claims to arbitration, that New Mexico law favors the arbitration of disputes, and the law of many states that hold the opposite of the cases she cited.

New Mexico courts favor agreements to arbitrate and apply the rules of contract law to determine whether there has been an agreement to arbitrate. In Dairyland Ins. Co. v. Rose, 92 N.M. 527, 591 P.2d 281 (1979), the Supreme Court upheld an arbitration as binding and final where the parties had agreed to submit their dispute to arbitration. The court relied upon the UAA and stated "the legislative intent in enacting the [UAA], and the policy of the courts in enforcing it, is to reduce caseloads in the courts, not only by allowing arbitration, but also by requiring controversies to be resolved by arbitration where contracts or other documents so provide." Id. at 531, 591 P.2d at 285; see also Board of Educ. Taos Municipal Schs., 103 N.M. at 463, 709 P.2d at 185; Pueblo of Laguna v. Cillessen & Son, Inc., 101 N.M. 341, 682 P.2d 197 (1984) ("Courts are to interpret the provisions of arbitration agreements by the rules of contract law and are to apply the plain meaning of the language utilized, in order to give effect to the agreements struck by the parties." (citation omitted)). Here, Plaintiff signed an agreement that she understood the arbitration policy Lovelace implemented,

7

see **Exhibit 1**, even requested that her common law claims be arbitrated, see Exhibits 3 and 4, to Lovelace's Brief, and participated fully in the arbitration process.

Many courts have held that the FAA compels arbitration of employee's claims under state anti-discrimination laws, such as the New Mexico Human Rights Act. See Johnson v. Piper Jaffrey, Inc., 530 N.W.2d 790, 800-01 (Minn. 1995) (enforcing arbitration of claims brought under Minnesota Human Rights Act); Great Western Mortgage Corp. v. Peacock, 110 F.3d 222, 230-232 (3d Cir. 1997) (holding that an employee's claims for sexual harassment under New Jersey state law were subject to arbitration); Powers v. Fox Television Stations, Inc., 923 F. Supp. 21, 23-24 (S.D.N.Y. 1996) (enforcing arbitration of claims of age discrimination brought under New York State Human Rights Law). See generally E.E.O.C. v. Waffle House, Inc., 193 F.3d 805 (4th Cir. 1999) (refusing to allow the EEOC to pursue in court remedies of back pay, reinstatement, and damages for individual who agreed to arbitrate claims); E.E.O.C. v. Kidder, Peabody & Co., 156 F.3d 298 (2d Cir. 1998) (same).

Plaintiff's cited case of Heurtebise v. Reliable Business Computers, 550 N.W.2d 243 (Mich. 1996), held that an employee handbook, to which the employer did not agree to be bound, did not create an enforceable arbitration agreement. In the present case, Lovelace agreed to be bound by the arbitrator's decision as binding, and agreed to the same rules as the employee when participating in the arbitration. See Exhibit 2, pp. 4-9 to Lovelace's Brief.[2]

---

[2] The Heurtebise decision is suspect because, amazingly, the court considered new evidence and thus, became a fact-finder, instead of a court of appellate review. See 550 N.W.2d at 246 ("We note that the entire handbook was not presented to the trial court or to the Court of Appeals. After oral argument, we granted the plaintiff's motion to expand the record to include the entire handbook."). After the court reached its decision that the employee handbook did not create a binding agreement, only three justices agreed to address the public policy issue of whether Heurtebise's claim under the Michigan Human Rights Act for which proposition Plaintiff cites this case. See id. at 247-48, 258. The majority refused to address the public policy issue. See id. at 258. Therefore, this portion of the decision is pure dicta and the equivalent of a dissent, and not only not binding on the Michigan courts, but clearly not even persuasive to a New Mexico court.

8

The other case relied upon by Plaintiff is similarly inapposite. In <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal. App. 4th 1519, 60 Cal. Rptr. 2d 138 (1997), the Court of Appeals, Second District, found an agreement to arbitrate unconscionable in part because the employment contract between the parties was a contract of adhesion, which contained unconscionable provisions. Also, the employment contract limited the plaintiff's remedies and damages, but did not equally bind the employer. Further, the plaintiff's claims in <u>Stirlen</u> were derived from an alleged breach of contract, none involved alleged employment discrimination. In <u>24 Hour Fitness, Inc. v. Superior Court</u>, 66 Cal. App. 4th 1199, 1216, 78 Cal. Rptr. 2d 533, 543 (1998), the California Court of Appeals, First District, refused to apply the holding in <u>Stirlen</u> to a case where an employee signed an enforceable arbitration agreement regarding employment-related disputes. The court failed to find any unconscionability because the arbitration clause applied equally to both employee and employer, allowed both parties similar discovery, and created no imbalances in remedies. See <u>id.</u> at 1213, 78 Cal. Rptr. 2d at 541.

In the present case, the facts are more like <u>24 Hour Fitness, Inc.</u> than <u>Stirlen</u>. Here, Plaintiff was an at-will employee and did not have an employment contract. There is nothing unconscionable in the arbitration policy: it applies equally to both employee and employer, permits extensive discovery, and creates no imbalances in remedies. The arbitrator has "full power and authority to award any remedy that either party would have been entitled to had the employee taken the dispute to a government agency or to a court." Exhibit 2, p. 8 to Lovelace's Brief.

Plaintiff has misstated the facts and applied inapplicable law in an attempt to switch this issue from one of whether she is precluded by res judicata from reasserting the same issues arbitrated in federal court, to whether she was bound by an arbitration agreement. As clearly demonstrated above,

9

Plaintiff's claims are without merit, and subject to sanctions for misstating the facts that she was not bound by an arbitration agreement.

### **Despite Plaintiff's Attempts to Confuse this Court as to the Binding Nature of Plaintiff's Agreement to Arbitrate, Plaintiff Did Voluntarily Arbitrate Her Claims, and Therefore Is Bound by Claim Preclusion (Res Judicata) From Rearguing the Same Issues in this Court**

Regardless of Plaintiff's attempts in the Response Brief to circumvent her agreement to arbitrate, it is undisputed that Plaintiff did in fact arbitrate her employment-related disputes with Lovelace, and therefore, is barred by claim preclusion from relitigating these issues in this court. All of the elements of claim preclusion are met in this case. The parties are the same. The claims are nearly identical, and certainly the additional alleged claims are encompassed by the transactional approach applied by both the Tenth Circuit and New Mexico courts to prevent a party from alleging new legal theories on the same set of facts in an attempt to rehash already decided issues. See Clark v. Haas Group, Inc., 953 F.2d 1235, 1237-38 (10th Cir.1992) (explaining that the transactional approach requires examining what facts constitute a "series" of transactions by determining "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit"); Chavez v. City of Albuquerque, 1998-NMCA-004, 124 N.M. 479, 484, 952 P.2d 474, 479 (Ct. App. 1997) ("To determine whether the cause of action was the same, we apply the transactional test. ... 'Transaction' denotes a common nucleus of operative facts."). Plaintiff alleges no new facts and issues in her Second Amended Complaint other than those already arbitrated and addressed in the arbitration decision.

Plaintiff argues, without distinguishing binding New Mexico law, that participation in an arbitration which contains the same procedural safeguards as a court of law, is not a judgment on the merits. Both Rex, Inc. v. Manufactured Hous. Comm., 119 N.M. 500, 504-05, 892 P.2d 947, 951-52 (1995) and Coffey v. Dean Witter Reynolds Inc., 961 F.2d 922, 927 (10th Cir. 1992) hold otherwise.

Plaintiff received the same procedural safeguards as a court of law, conducted substantial pre-hearing discovery, and obtained a thorough analysis by the arbitrator. Obviously, to Plaintiff's dismay, the arbitrator addressed all the factual allegations now realleged in the Second Amended Complaint, and could not find any merit to any of them. Specifically, the arbitrator found no objective evidence of Plaintiff's alleged cognitive and vision problems. See Exhibit 5, p. 3 to Lovelace's Brief. Further, the arbitrator found that Plaintiff resisted all efforts at receiving additional training to meet Lovelace's required cross-training goals, including refusal to study at an off-site specialized school, and self-study of eight paid hours per week, during her regular shift. See id. The arbitrator further found that "similarly situated employees became cross trained" and that Plaintiff was capable, "but because she did not think she could learn-she didn't." Id. at 4.

The Arbitration Rules and Procedures obviously contemplate that a hearing conducted in accordance with the FAA is equivalent to a court proceeding because the rules provide that either party consents "to the entry of a judgment upon the arbitration decision in any federal or state court with jurisdiction over the parties and the dispute." See Exhibit 2, p. 8 ¶ 25(b), to Lovelace's Brief; see also FAA, 9 U.S.C. § 9. While a judgment was not entered in this case following the arbitration, nonetheless, this section shows that both Congress and the courts agree that a thorough arbitration proceeding contains the same procedural safeguards as a court of law, and thus has the same effect as a judgment in a court of law. Plaintiff participated fully in the arbitration, and now cannot argue, as she apparently does, that she merely participated in an internal grievance process.

The purpose of the claim preclusion doctrine is "to promote finality in civil disputes, and to serve judicial economy by preventing abuse of process." See Chavez, 124 N.M. at 484, 952 P.2d at 479. As noted in a case cited by Plaintiff, Ford v. New Mexico Department of Public Safety, 119 N.M. 405, 409, 891 P.2d 546, 550 (Ct. App. 1994), claim preclusion exists because while "[c]ourts

11

are committed to providing every litigant a full and fair opportunity to sue or defend . . . once a judgment is rendered after such an opportunity, justice requires that there be an end to the litigation." Plaintiff has had a full and fair opportunity, and now wishes to begin anew in this Court to readdress what has already been decided.

Lovelace is entitled to have this case dismissed with prejudice on the grounds of res judicata and to an award of attorney's fees and costs for defending this litigation.

## Plaintiff is Time-Barred by the FAA

Plaintiff completely failed to address Lovelace's argument that Plaintiff's Complaint is time barred by the FAA, apparently because she thinks the FAA is inapplicable to her claims. It is ironic that she did not think the FAA was inapplicable to her claims at the time she submitted them to arbitration, and participated fully in the arbitration in accordance with the FAA rules. Now, she ignores the provisions of the FAA for challenging an arbitration award. See 9 U.S.C. § 12 (1994). She failed to challenge the award within three months as required by Section 12 of the FAA, and thus is time-barred from challenging the award now.

## Conclusion

When distilled of its essence, Plaintiff's Second Amended Complaint and Response Brief are nothing more than a lament that she lost her arbitration. For these reasons, Lovelace's motion to dismiss should be granted.

WIGGINS, CAMPBELL & WELLS
A Professional Corporation

By /s/ Lorna M. Wiggins
Lorna M. Wiggins
Marianne B. Hill
Attorneys for Lovelace Health Systems, Inc.
20 First Plaza, Suite 710 (87102)
Post Office Box 1308
Albuquerque, New Mexico 87103-1308
(505) 764-8400

We hereby certify that a copy of the foregoing was hand-delivered to opposing counsel of record on this 28th day of July, 2000.

WIGGINS, CAMPBELL & WELLS
A Professional Corporation

By /s/ Lorna M. Wiggins
Lorna M. Wiggins
Marianne B. Hill

H:\LMW\CLIENT 1605 009\pldgs\replybrief-mtd-resjudicata.wpd

13

THE EXHIBITS ATTACHED TO THIS PLEADING ARE TOO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT, U.S. DISTRICT COURT CLERK'S OFFICE.