IN THE UNITED STATES DISTRICT COURT'

FOR THE DISTRICT OF NEW MEXICO

SONIA L. SABATH,

    Plaintiff,

vs.                                                      No. CIV 99-621 MV/KBM

LOVELACE HEALTH SYSTEMS, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), and for Sanctions and Attorneys' Fees, filed July 28, 2000. On October 24, 2000, this Court converted Defendant's Motion to Dismiss to a Motion for Summary Judgment, because both parties referenced materials outside of the pleadings. The Court finds that Defendant's Motion for Summary Judgment will be **granted**; Defendant's Motion for Sanctions will be **denied**; and Defendant's Motion for Attorneys' Fees and Costs will be **granted in part and denied in part.**

## BACKGROUND

Plaintiff Sonia Sabath filed a complaint against her employer, Lovelace Health Systems, Inc. ("Lovelace"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); retaliation after protected activity under the ADEA; discrimination based on disability/ failure to accommodate under the Americans with Disabilities Act ("ADA");

1

retaliation for protected activity under the ADA; and abusive discharge/ public policy under New Mexico state law.

Sabath worked for Lovelace for almost 30 years, from 1969 until December 1997, when she was discharged. At the time of her discharge, Sabath was a clinical laboratorian. On January 12, 1998, Sabath sent a letter to Lovelace's Employee Relations Department demanding arbitration. She presented the following questions to the arbitrator:

> 1) Should Sonia Sabath have been provided a reasonable accommodation? 2) Could Sonia Sabath have been accommodated without undue hardship? 3) Whether Sonia Sabath should have been provided more training in hematology before being discharged; 4) Was there good cause to terminate Sonia Sabath? 5) Was the termination consistent with Lovelace policy and common practice? 6) Did Sonia Sabath fail to perform a material and essential function of her job? 7) Was the termination of Sonia Sabath discrimination based upon her age or due to her stress? 8) Was the termination of Sonia Sabath due to her seeking accommodation?

Defendant's Brief in Support of Its Motion to Dismiss, Exhibit 1. Sabath sent a subsequent letter to Lovelace stating that the arbitration would cover claims of age discrimination, claims under the ADA, as well as common law claims of wrongful termination. *See* Defendant's Brief in Support of Its Motion to Dismiss, Exhibit 3. On March 12, 1998, Sabath's counsel sent another letter further clarifying the issues for arbitration and including the additional claims of retaliation for filing a Title VII claim with the New Mexico Human Rights Division or the Equal Employment Opportunity Commission ("EEOC"). *See* Defendant's Brief in Support of Its Motion to Dismiss, Exhibit 4.

In December 1998, Sabath participated in arbitration. She was represented by an attorney and conducted discovery, including depositions and the exchange of exhibits and witness lists. The arbitration proceeding lasted four days, during which witnesses were called, cross-examined,

and documents were admitted into evidence.  In January 1999, the arbitrator issued a five-page decision denying Sabath's claims.  *See* Defendant's Brief in Support of Its Motion to Dismiss, Exhibits 2, 5.

Sabath filed her second complaint with the EEOC in October 1998 (the first was filed prior to her termination).  The EEOC issued a right to sue letter on March 3, 1999.  Sabath filed a *pro se* complaint in federal court on June 2, 1999, alleging the same facts previously submitted to arbitration.  This complaint was never served.  Sabath retained counsel and filed a First Amended Complaint on September 29, 1999, and then a Second Amended Complaint, naming the proper defendant, on June 6, 2000.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories,

and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## DISCUSSION

### A.  Is There An Agreement?

Defendant Lovelace argues that Sabath's complaint is barred by res judicata and claim preclusion because she previously submitted all of her claims to arbitration. Lovelace's Arbitration Rules and Procedures states that:

> Arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by LHS's internal dispute resolution processes. Both LHS and the employee will be bound by any decision made by a neutral arbitrator. If the employee or LHS do not abide by the arbitrator's decision, either party may go to court to enforce the arbitrator's decision, but Arbitration must be used before going to court. This policy is intended to prevent an employee from going to court over employment related

4

disputes, it is not intended to take away any other rights.

Defendant's Brief in Support of Its Motion to Dismiss, Exhibit 5.

The first task of the Court is to determine whether this clause in Lovelace's policy is an agreement with Sabath. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). "As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court." *Armijo v. Prudential Ins. Co.*, 72 F.3d 793, 797 (10th Cir. 1995) (citing *Mitsubishi*, 473 U.S. at 626). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Williams v. Imhoff*, 223 F.3d 758, 764 (10th Cir. 2000) (citations omitted).

Sabath asserts that she did not sign a contract waiving her statutory rights in favor of arbitration. Rather, Sabath states that she merely acknowledged receipt of a policy issued by Lovelace. Lovelace concedes that Sabath did not have an employment contract. *See* Defendant's Brief in Support of Its Motion to Dismiss at 9. Were these the only operative facts in the case, this Court would conclude that summary judgment is not appropriate. As the Ninth Circuit has noted, after the Supreme Court granted certiorari in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), Congress amended the ADEA to provide that all waivers of rights under the Act must be "knowing and voluntary." *See Duffield v. Robertson Stephens and Co.*, 144 F.3d 1182, 1190 n.5 (9th Cir. 1998) (citing Older Workers Benefit Protection Act of 1990, Pub. L. 101-433, 104 Stat. 983 (1990); 29 U.S.C. § 626(f)(1)). "A waiver is not considered knowing and voluntary if the individual waives rights or claims that may arise after the date the waiver is executed." *Duffield*, 144 F.3d at 1190 n.5. Thus, so-called "prospective waivers" are not

5

considered valid.

As Sabath points out, "[t]he context in which an arbitration clause arises cannot be ignored." *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1453 (10th Cir. 1997), *judgment vacated and remanded by* 524 U.S. 947, *rev'd on other grounds by* 158 F.3d 1371 (10th Cir. 1998). Contrary to Lovelace's repeated contentions, Sabath did not sign an arbitration agreement. The document she signed merely indicated that she acknowledged receipt of Lovelace's policy manual. The Federal Arbitration Act ("FAA") only applies if there is an individual agreement signed by both parties and a court is satisfied that the parties have agreed in writing to arbitrate the issues in dispute. *See Williams*, 203 F.3d at 764. The document signed by Sabath would be insufficient to find that the FAA applied to Sabath's claims, and thus to hold that Sabath was precluded from bringing her claims to a judicial forum. *See Ramirez-de-Arellano v. American Airlines, Inc.*, 133 F.3d 89, 90-91 (1st Cir. 1997) (plaintiff received an employee handbook that contained an internal grievance resolution procedure; "given the apparent unilateral and adhesive nature of American's employee handbook, we do not embrace the argument that plaintiff voluntarily waived his right to pursue his claims in federal court"); *see also Nelson v. Cyprus Bagdad Cooper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) ("the unilateral promulgation by an employer of arbitration provisions in an Employee Handbook does not constitute a 'knowing agreement' on the part of an employee to waive a statutory remedy").

However, the process did not stop there, and this Court has additional facts to consider in examining the context of the arbitration agreement. Sabath voluntarily submitted her federal statutory claims to the arbitrator. By doing so, Sabath assented to the terms of the Lovelace's policy on arbitration. Sabath issued a demand letter for arbitration, the first sentence of which

stated, "This is the demand for Arbitration as required in the Lovelace/CIGNA policy." Lovelace's Brief In Support of Its Motion for Dismissal, Exhibit 1.  Two months later, her arbitration counsel sent a letter to the Employee Relations Department stating that the issues to be decided during arbitration should include possible violations of Sabath's rights under the Americans with Disabilities Act, the Age Discrimination Act and Title VII.  *See* Lovelace's Brief, Exhibit 3.  Sabath and Lovelace then arbitrated Sabath's claims before the American Arbitration Association Tribunal in December 1998.  The arbitrator denied Sabath's claims.  Based upon this series of actions, Sabath's intent to be bound by Lovelace's arbitration policy can be inferred.  *See Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994).

     Fatal to Sabath's case is the fact that she voluntarily submitted her claims to arbitration and did not object to the arbitrator's authority to hear her claims during the arbitration. The caselaw is uniform throughout the country that once a party voluntarily submits a claim or claims to arbitration, they are bound by the arbitrator's decision.  *See Rock-Tenn Co. v. United Paperworkers International Union, AFL-CIO*, 184 F.3d 330, 334-35 (4th Cir. 1999) ("even when a party could have refused arbitration in the first instance, ... if that party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it"); *Kiernan v. Piper Jaffray Companies, Inc.*, 137 F.3d 588, 594 (8th Cir. 1998) (because plaintiffs voluntarily pursued arbitration to final binding decision without ever objecting, in arbitration, to arbitrability of their claims, plaintiffs were bound by arbitrator's decision); *Conntech Development Co. v. University of Conn.,* 102 F.3d 677, 685 (2nd Cir. 1996) (party must object to arbitrator's authority in arbitration proceeding); *Nghiem v. NEC Elec., Inc.*, 25 F.3d at 1440 ("Once a claimant submits to the authority of the arbitrator and pursues

7

arbitration, he cannot suddenly change his mind and assert lack of authority.  Nghiem is bound by the arbitrator's decision."); *Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union*, 760 F.2d 173, 175-76 (7th Cir. 1985) (party is bound by  arbitrator's decision if party voluntarily submits issue to arbitration); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980) (employer waived any objection to arbitrator's jurisdiction by submitting issues to arbitrator; thus employer was bound by arbitrator's decision and could not pursue claim in federal court); *Baer v. Terminix Int'l Co., L.P.*, 975 F. Supp. 1272, 1279 (D.Kan. 1997) ("If a party submits and argues the issue on the merits without either objecting to the arbitrator's authority or expressly reserving the jurisdiction objection, the party waives its right to seek judicial review of this jurisdiction objection."); *Ramirez de Arellano v. American Airlines, Inc.*, 957 F. Supp. 359, 361 (D.P.R. 1997) ("Plaintiff may not unilaterally disengage the gears of arbitration and file in court once he has voluntarily submitted to arbitration"; court held that arbitrator's decision was entitled to res judicata).

**B.  Are Sabath's Claims Barred by the Previous Arbitration?**

Sabath submitted to arbitration all of the federal claims that she seeks to vindicate before this Court.  Agreements which require arbitration of statutory claims are enforceable under the FAA.  *See Williams*, 163 F.3d at 1233 (citing *Gilmer*, 500 U.S. at 26) (ADEA claims may be subjected to compulsory arbitration).  As long as the litigant is afforded an opportunity in arbitration to vindicate the same substantive rights as before a judicial forum, and the arbitration forum is as effective and accessible as the judicial one, the FAA applies.  *See Gilmer*, 500 U.S. at

26-33.

Sabath has not argued that the arbitration process she underwent denied her of any of the rights to which she would have been entitled in a judicial forum.  The evidence presented indicates that the arbitration in this case was merely an alternate forum. Sabath was afforded an opportunity in arbitration to vindicate the same rights as before a judicial forum, and the arbitration forum was as effective and accessible as the judicial one.  Sabath was represented by an attorney; the process took four days; both sides conducted discovery, examined and cross examined witnesses, introduced exhibits, and presented legal argument.  The arbitrator applied the substantive relevant law to the case and issued a five-page decision explaining her reasons for denying Sabath's claims.  The arbitration clause in the Lovelace policy provides for appeal of the arbitrator's decision.  The action was similar to a judicial proceeding.  Therefore, the FAA applies to Sabath's action in this Court, and, if the criteria for res judicata are met, the arbitration should be given preclusive effect.

The next inquiry is whether Sabath's claims are barred by res judicata.  In order for the doctrine to apply, there are three criteria:  (1) the first suit must have proceeded to a final judgment on the merits; (2) the parties must be identical or in privity; and (3) the suits must be based on the same cause of action.  *See Mitchell v. City of Moore*, 218 F.3d 1190, 1202 (10th Cir. 2000) (citing *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 (10th Cir. 1999)). In determining whether the third element is met, Defendant Lovelace correctly points out that the Tenth Circuit has adopted the "transactional approach."  This requires the Court to take into account three factors:  "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1237 (10th Cir.

9

1992) (citing Restatement (Second) of Judgments § 24 (1982)).

### 1. Federal Claims

Sabath's claims alleging violation of the ADEA and the ADA are clearly barred by the doctrine of res judicata. There was a final judgment on the merits. The arbitrator issued a substantial written decision denying Sabath's claims and stated the reasons for the denial. The final paragraph of the arbitrator's award states: "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are, hereby, denied." Lovelace's Brief in Support of Its Motion to Dismiss, Exhibit 4. Moreover, the Tenth Circuit and the New Mexico Supreme Court have recognized that arbitration awards are entitled to preclusive effect, as defendant Lovelace points out. In *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 927-928 (10th Cir. 1992), the court recognized that an arbitration award was a final judgment. *Id.* In *Rex, Inc. v. Manufactured Housing Comm.*, 892 P.2d 947, 952 (N.M. 1995), the New Mexico Supreme Court held that arbitration decisions are considered final judgments as long as the proceedings contain the same procedural safeguards as those available in a judicial forum. As discussed above, the arbitration proceedings in this case provided the same procedural safeguards available in a judicial forum. Therefore, the arbitrator's decision was a final judgment. As to the second and third factors, they are clearly met with respect to Sabath's federal claims. The parties are the same, and the present suit involves the identical causes of action. Therefore, Sabath's federal claims are barred by res judicata.

### 2. State Law Claims

Ms. Sabath's state law claims of abusive discharge and violation of public policy are likewise barred by res judicata. It does not matter that Ms. Sabath did not submit these claims to

arbitration. Whether two cases are identical as to the "cause of action" and "subject matter" depends not on the legal theories of liability pursued but on whether the "same operative facts form the basis" of both actions. *Santa Fe Village Venture v. City of Albuquerque*, 914 F. Supp. 478, 481 (D.N.M. 1995). "'Claim preclusion does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action.' The doctrine bars claims that were or could have been brought in the prior proceeding." *Strickland v. City of Albuquerque*, 130 F.3d 1408, 1413 (10th Cir.1997). "Inasmuch as the doctrine of res judicata precludes parties from relitigating issues that were or could have been raised, parties cannot defeat its application by simply alleging new legal theories." *Clark*, 953 F.2d at 1238.

In *Clark*, the plaintiff first sued her former employer under the FLSA, seeking to recover unpaid overtime compensation. *See id.* at 1236. Three months after the action was dismissed with prejudice, the plaintiff again sued her former employer, this time for wrongful termination under the Age Discrimination in Employment Act and for violations of the Equal Pay Act. *See id.* The Tenth Circuit held that plaintiff's second claim was precluded by the first since both were based upon a single transaction: the employment relationship. *See id.* at 1239. The court found that the "transaction" was the employee's employment, and that because her claims of age discrimination and equal pay deprivation could have been heard in the first action, her second suit was barred by res judicata. *See id.* [1]

---

[1] The court in *Yapp* expressed concern with such a broad concept of "transaction," noting that "[n]o other court applying the transactional test has held that suits arising from the same employment relationship are thereby necessarily grounded upon the same transaction." *Yapp*, 186 F.3d at 1228. The court cited a series of other cases that held that a second suit that arose from the same employment relationship as the first was not precluded because it was grounded upon a different transaction. *See Yapp*, 182 F.3d at 1228, n.6 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914-15 (7th Cir.1993) (holding suits premised upon different transactions when first suit against employer arose from rape of employee on work premises and second suit arose from employer's misrepresentations about plaintiff's status as an employee); *Kent County Bd. of Educ. v. Bilbrough*, 309 Md. 487,

In *Yapp,* the court was presented with a case that was "factually indistinguishable from the one" in *Clark.* The plaintiff in *Yapp* first sued his former employer for unpaid overtime compensation under the FLSA, and then subsequently sued his former employer for wrongful discharge. *Yapp*, 186 F.3d at 1225. The court in *Yapp* cited *Clark* in holding that plaintiff's second suit was barred by the first: "The court in *Clark* eliminated all ambiguity in the meaning of 'transaction' in this factual context: it stated that "the 'transaction' was Clark's employment.'" *Id.* at 1228 (citing *Clark*, 953 F.2d at 1239).

The only difference between Sabath's federal claims that were adjudicated by the arbitrator and her state law claims of abusive discharge and violation of public policy is the difference in legal theories asserted by the Sabath. The "same operative facts" form the basis of Sabath's claims; namely, her discharge and the reasons surrounding her discharge. Sabath could have raised her state law claims in the arbitration. Lovelace's arbitration policy provides for arbitration of state law as well as federal claims. Therefore, all of Sabath's present claims are

---

525 A.2d 232, 239-40 (1987) (expressly rejecting classification of employer-employee relationship as same transaction for claim preclusion purposes)). The court further noted that previous Tenth Circuit law stated that a second suit brought by former employee was precluded by a first because both suits were predicated upon the same discrete event, such as the employee's wrongful discharge, rather than the entirety of the employment relationship. *See Yapp*, 186 F.3d at 1228 n.6 (citing *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1166 (1st Cir. 1991) (holding that claim preclusion applied because both suits stemmed from plaintiff's termination); *Langston v. Insurance Co. of N. Am.*, 827 F.2d 1044, 1047 (5th Cir. 1987) (same); *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) (same); *King v. Union Oil Co. of Cal.*, 117 F.3d 443, 445 (10th Cir. 1997) (same)). In *Mitchell v. City of Moore,* the Tenth Circuit reiterated *Yapp*'s concern that "[o]ur caselaw seems to stand for the proposition that all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes." *Id.* at 1202. The court limited *Clark's* holding and found that the third factor, identity of the cause of action, was not met because the facts that gave rise to plaintiff's second suit were not in existence when plaintiff filed his first suit (although the court based its decision not to apply preclusion because the second factor - identity of the parties - was not met). The court noted that *Clark* and *Yapp* involved cases where the facts giving rise to the second lawsuit were in existence at the time the first lawsuit was filed, and therefore preclusion was appropriate. However, the court agreed with courts that held that claim preclusion does not bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed. *See id* (citing cases). This Court does not need to decide whether all claims based upon plaintiff's employment period would be barred by the initial arbitration proceedings. This case presents a much easier and straightforward case than *Clark* or *Yapp*.

12

barred by res judicata.

### C.  Sanctions

Defendant Lovelace requests that Sabath's counsel be sanctioned under Fed. R. Civ. P. 11 for filing her second amended complaint in federal court.  The Court does not find that plaintiff's action was frivolous and declines to impose sanctions.  As the Court has discussed, Lovelace's primary contention - that Sabath waived her right to a judicial forum merely by acknowledging receipt of Lovelace's policy manual - is unfounded.  While the Court has concluded that plaintiff's claims here must fail because she voluntarily submitted them to arbitration, this conclusion is not based on existing Tenth Circuit or Supreme Court precedent.  In arguing for plaintiff's day in federal court, plaintiff's counsel fully complied with Fed. R. Civ. P. 11(b)(2), which allows "legal contentions [that] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."  An award of sanctions is improper.

### D.  Attorneys' Fees

Defendant Lovelace also argues that it should be awarded attorneys' fees because language in its policy states that if a party's efforts to "overturn" the arbitrator's decision are unsuccessful, it must pay the other party's attorneys' fees.  *See* Lovelace's Brief in Support of Its Motion to Dismiss, Exhibit 2.  Lovelace is mistaken in asserting that plaintiff's present suit is an attempt to overturn the arbitrator's decision.  Plaintiff did not believe that the arbitrator's decision was binding; therefore, plaintiff was not attempting to "overturn" it.  Plaintiff merely sought to

vindicate her statutory rights in federal court. As Lovelace itself points out, an arbitrator's decision may be set aside only for the narrow grounds listed in 9 U.S.C. § 10 (*e.g.*, corruption, bias, misconduct of the arbitrator, the arbitrator exceededing her power, violation of public policy). As Lovelace also concedes, plaintiff did not raise these grounds in the present action. *See* Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss. The Court therefore declines to award attorneys' fees to defendant Lovelace.

However, defendant Lovelace is entitled to costs. "Federal Rule of Civil Procedure 54(d) authorizes an award of costs to prevailing parties. The Rule states that 'costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.'" *Klein v. Grynberg*, 44 F.3d 1497, 1506 (10th Cir. 1995) (citing Fed. R. Civ. P. 54(d)(1)). The Tenth Circuit has held that this language "creates a presumption that the prevailing party shall recover costs." *Id*. The Tenth Circuit held that denying costs to a prevailing party would be in the nature of a severe penalty imposed upon them, and there must be some apparent reason to penalize the prevailing party if costs are to be denied. *Id.* (citing *Serna v. Manzano*, 616 F.2d 1165, 1167 (10th Cir.1980); *True Temper Corp. v. CF & I Steel Corp.*, 601 F.2d 495, 509 (10th Cir.1979)). The Court does not see any reason to penalize Lovelace; therefore costs will be awarded. Lovelace is directed to submit an affidavit of costs within five (5) working days of this Order, and plaintiff is directed to submit a response to defendant's costs within ten (10) working days of this Order.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment is

Case 6:99-cv-00621-MV-KBM   Document 26   Filed 03/22/01   Page 15 of 15

**granted.** The action will be dismissed with prejudice.

      **IT IS FURTHER ORDERED** that Defendant's motion for sanctions is **denied.**

      **IT IS FURTHER ORDERED** that Defendant's motion for attorneys' fees is **denied**; however, Defendant's motion for costs is **granted.** Defendant Lovelace is directed to submit an affidavit of costs within five (5) working days of this Order, and Plaintiff is directed to submit a response to defendant's costs within ten (10) working days of this Order.

DATED this 22nd day of March, 2001.

_____
MARTHA VÁZQUEZ
U. S. DISTRICT JUDGE

<u>Attorney for Plaintiff</u>
Hannah Best
Gail Heglund

<u>Attorneys for Defendant Lovelace</u>
Lorna Wiggins
Marianne Hill

15